UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.

**ENRIQUE ALVEAR,**

      Plaintiff,

vs.

**ALDO U.S., INC. d/b/a SPERRY,**
**a foreign for-profit corporation,**

      Defendant.

_____/

## COMPLAINT

Plaintiff ENRIQUE ALVEAR, through undersigned counsel, sues Defendant

ALDO U.S. INC., d/b/a SPERRY, a foreign for-profit corporation, and alleges as follows:

1.     This is an action for declaratory and injunctive relief, attorney's fees, costs,

and litigation expenses for unlawful disability discrimination in violation of Title III of the

Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28

C.F.R. Part 36.

2.     This Court has jurisdiction over this case based on federal question

jurisdiction, 28 U.S.C. §1331 and the provisions of the ADA. Plaintiff seeks declaratory

and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3.     Venue is proper in this Court as all actions complained of herein and injuries

and damages suffered occurred in the Middle District of Florida.

user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'...Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y. 2017).

7.     Defendant is a foreign for-profit corporation authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls a chain of retail stores selling men, women's, and kid's footwear, including the store that Plaintiff intended to patronize in the near future located in the Tanger Outlets Daytona at 1100 Cornerstone Boulevard, Daytona Beach, Florida.

8.     Plaintiff's blindness limits him in the performance of major life activities, including seeing, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

9.     Plaintiff frequently accesses the internet. Because he is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10.     At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls a chain of retail stores under the name "Sperry". Each

3

"Sperry" store is open to the public. As the owner, operator, and/or controller of these stores, Defendant is defined as a place of "public accommodation" within meaning of the ADA because Defendant is a private entity which owns, operates, and/or controls, "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(5).

11.    Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(E), and its implementing regulations, 28 C.F.R. Part 36.

12.    Defendant also owns, controls, maintains, and/or operates an adjunct website, https://www.sperry.com/us/en_US (the "Website"). One of the functions of the Website is to provide the public information on the locations of Defendant's physical stores. Defendant also sells to the public its merchandise through the Website, which acts as a critical point of sale for Defendant's merchandise that is also available for purchase in, from, and through Defendant's physical stores. In addition, the Website allows users to sign up for an emailer to receive exclusive offers, benefits, invitations, and discounts for use online and in the physical stores.

13.    The Website also services Defendant's physical stores by providing information on available merchandise, services, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14.    Because the Website allows the public the ability to secure information about the locations of Defendant's physical stores, purchase merchandise that is also available

4

for purchase in, from, and through the physical stores, and sign up for an emailer to receive exclusive offers, benefits, invitations, and discounts for use online and in the physical stores, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical stores, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar locations and businesses.

15.     Because the public can view and purchase Defendant's merchandise through the Website that is also offered for sale in, from, and through Defendant's physical stores, thus having the Website act as a critical point of sale for Defendant's merchandise that is also sold in, from, and through the physical stores, and sign up for an emailer to receive exclusive offers, benefits, invitations, and discounts for use online and in the physical stores, the Website is an extension of, and gateway to the physical stores, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical stores.

16.     At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website. Since the Website is open to the public

through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

17.    Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied, Defendant's physical store located in the Tanger Outlets Daytona, and to check store hours and merchandise pricing, purchase merchandise, and sign up for an emailer to receive exclusive offers, benefits, invitations, and discounts for use online and in the physical stores. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been updated to interact properly with screen reader software.

18.    The opportunity to shop and pre-shop Defendant's merchandise and sign up for an emailer to receive exclusive offers, benefits, invitations, and discounts for use online and in the physical stores from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

6

19. Like many consumers, Plaintiff accesses a number of websites at a time to help plan his store visits and to compare merchandise, prices, services, sales, discounts, and promotions. Plaintiff may look at several dozen websites to compare features, discounts, services, promotions, and prices.

20. Beginning in December 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise offerings and online offers to educate himself as to the merchandise, sales, services, discounts, and promotions being offered, learn about the brick-and-mortar stores, check store hours, and check merchandise pricing with the intent to make a purchase through the Website or in, from, and through the physical store located in the Tanger Outlets Daytona. Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons, such as himself, who use screen reader software to access and navigate company websites.

21. Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These access barriers, one or more of which were experienced by Plaintiff, are pervasive and, as confirmed by Plaintiff's expert, include the following (with reference to the Web Content Accessibility Guidelines ("WCAG") 2.1 Level A and AA):

a) Level A Guideline 2.1.1 – Keyboard (website must be accessible by keyboard only (no mouse or other pointing device)) – Inaccessible size charts; on the

7

"sizing" webpage, the screen reader user can tab to and expand each of the collapsed tabs on the page but cannot access the associated size charts displayed for them. For example, when the screen reader user tabs to the first collapsed tab (i.e., "Footwear") and presses the enter key, the tab expands to display two additional tabs and a size chart below them. If the screen reader user immediately presses the down arrow key after the tab is expanded, focus does not move to any of the content below; the user must press the tab key, at which point focus moves to the first of the two tabs for the section (i.e., "Women's Sizes", "Men's Sizes", etc.), and then the left/right arrow keys can be used to toggle focus between them. Additionally, each tab displays an associated size chart below when given focus, but these are not accessible with the arrow keys. Pressing the down arrow key does not move focus from the tabs, and the left/right arrow keys just toggle focus between the two like before. The screen reader user must therefore press the tab key to move focus down the page, which results in focus jumping to the next collapsed tab and skipping over the chart for the previous collapsed tab.

b)      Level A Guideline 2.1.1 - Keyboard (2) (website must be accessible by keyboard only (no mouse or other pointing device)) – Inaccessible answers to FAQs. The screen reader user can tab to FAQs on the FAQ webpage and press the enter key to expand their answers, however, once an answer is expanded, pressing the down arrow key does not move focus to the answer. Instead, the focus indicator visibly scrolls down the page but not to any readable content. The screen reader user thus must press the tab key to move focus down the page, at which point focus jumps to the next FAQ below and skips over the expanded answer for the previous question.

8

c)　　Level A Guideline 2.1.1 - Keyboard (3) (website must be accessible by keyboard only (no mouse or other pointing device)) – Inaccessible product features and details. For example, the screen reader user can tab to the (pre-expanded) "Product Features" tab on a product page, but cannot access its expanded content with the arrow keys; pressing the down arrow key does not move focus to any readable content below the tab. The screen reader user must press the tab key to continue down the page, at which point focus jumps immediately to the collapsed "Product Details" tab below. This can be expanded with the enter key, but the expanded content is inaccessible when navigating with arrow keys. Pressing the tab key skips the first paragraph of text and moves focus to the "Read More" link at the end of it. This can be selected to expand additional details. At this point, after selecting the "Read More" link, switching to arrow key navigation successfully moves focus over the remaining text below the link. However, and as noted above, none of the text for the "Product Features" tab or the first paragraph of text for the "Product Details" tab was accessible with the screen reader software.

d)　　Level A Guideline 2.1.2 – No Keyboard Trap (website doesn't trap keyboard users (ensure users are not trapped in content and can move to and from components as well as focus with only a keyboard)) – Once a submenu is expanded for a collapsed navigation link, the inability of the screen reader user to close the submenu or tab out of it so as to move to the next navigation link. For example, once the "Boat Shoes" submenu is expanded, tab focus continues to loop through the links in the submenu only; there is no "close" button for the menu and at no point does tabbing move focus back to the main

navigation links. The screen reader user must select a link from the submenu to close it, which then results in them being redirected to a new webpage.

e)    Level A Guideline 2.4.3 – Focus Order (website provides focus in a logical order that preserves meaning and operability) – The lack of tab focus given to any of the clickable product images. For example, when tabbing onto a product page, focus moves from the breadcrumb links to the "wishlist" link, and then to the product details section of the page. None of the product images are announced nor are they accessible with the tab key.

f)    Level A Guideline 2.4.3 - Focus Order (2) (website provides focus in a logical order that preserves meaning and operability) – Disordered tab focus movement. When the "Edit" button is selected for a product in the cart pop-up, customization options appear for the item as expected, however, tab focus returns to the close (i.e., "x") button on the pop-up. Additionally, after the "Edit" button is selected, the screen reader software immediately announces the name of the next (i.e., unrelated) product in the cart, which confuses the screen reader user.

g)    Level A Guideline 4.1.2 – Name, Role, Value (All interactive elements are labeled with a descriptive name, role, and current value) – Color buttons displayed below products on a collection page that are unlabeled. Initially, tab focus moves over the entire group of color buttons and the screen reader software announces, "Product option list tab collapsed", which is unintelligible to the screen reader user. If the enter key is pressed, the screen reader software announces, "Expanded". Following from this, tabbing moves focus through the individual color buttons in the group, each of which is announced only as "color

option (#) button". As a result, the screen reader user cannot know which colors are being represented by the buttons.

22.    Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties accessing, navigating, and communicating with, the Website. Although the Website appeared to have an "accessibility" statement linked from its home page, that "accessibility" statement still could not be effectively accessed by, continued to be a barrier to, and did not provide a viable alternative means to fully and equally access and navigate the Website for blind and visually disabled persons, including Plaintiff. Plaintiff, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement to enable him to equally, quickly, fully, and effectively navigate the Website.

23.    The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, services, discounts, and promotions, as provided at the Website and in the physical stores as the non-visually disabled public.

24.    Plaintiff desires and intends in the near future once the Website's access barriers are removed or remedied to patronize Defendant's physical store located in the Tanger Outlets Daytona and to use the Website, but he is presently unable to do so as he is unable to effectively communicate with Defendant due to his blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable

11

to fully and equally access, navigate, and communicate with Defendant through the Website due to his blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

25.     Because of the nexus between Defendant's physical stores and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's physical stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodation subject to the requirements of the ADA.

26.     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

27.     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of the Website by individuals with disabilities.

28.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

12

29. On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

30. On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

31. On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

32. On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

33. Defendant has not created and instituted a useful and effective Specialized Customer Assistance line, service, or email contact mode for customer assistance for the visually disabled.

34. Defendant has not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

35. The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

36. Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who

want the safety and privacy of purchasing Defendant's merchandise offered on the Website and in the physical stores from their homes.

37.    Defendant thus has not provided full and equal access to, and enjoyment of, the goods, services, stores, privileges, advantages, and accommodations provided by and through the Website and the physical stores in contravention of the ADA.

38.    Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities, such as Plaintiff.

39.    The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet e-commerce websites, such as the Website at issue in the instant action.

40.    Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website, which prevent individuals with visual disabilities from the means to comprehend information presented therein.

41.    Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website.

42.    The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

43.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is

14

his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

44.    Notice to Defendant is not required because of Defendant's failure to cure the violations.

45.    Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

46.    Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

47.    Plaintiff re-alleges paragraphs 1 through 46 as if set forth fully herein.

48.    Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

49.    Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendant's physical stores, purchase merchandise also available for purchase in, from, and through the physical stores, and sign up for an emailer to receive exclusive offers, benefits, invitations, and discounts for use online and in the physical stores. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical stores. Further, the Website serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's available merchandise sold through the Website and in, from, and through the physical stores.

15

50.    Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, stores, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

51.    Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, stores, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, stores, privileges, advantages or accommodations."

52.    In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

53.    Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

54.    Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in the physical stores in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

55.    The Website was subsequently visited by Plaintiff's expert in January 2025 and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Despite being a defendant in prior ADA website accessibility lawsuits, one or more of which resulted in a confidential settlement agreement that obligated Defendant to fully remediate the Website, Defendant has made insufficient material changes or improvements to the Website to enable its full and equal use and enjoyment by, and accessibility to, blind and visually disabled persons, such as Plaintiff. Also, although the Website appeared to have an "accessibility" statement linked from its home page, that "accessibility" statement still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons, such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to blind and visually disabled individuals. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, stores, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.

56.    More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

57.    Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

58.    There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard.  Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

59.    Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals, such as Plaintiff, with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

60.    The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

61.    According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method

of making visually delivered material available to individuals who are blind or have low vision.

62.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

63.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

64.     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

65.     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar locations, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant's Website and its physical stores.

66.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

67.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, stores, privileges, advantages, and accommodations of the physical stores through the Website.

b)  Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical stores and becoming informed of and purchasing Defendant's merchandise, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

68.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the

undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A. A declaration that Defendant's Website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a Website accessibility coordinator, a Website application accessibility policy, and providing for Website accessibility feedback to ensure compliance thereto;

 [1] or similar.

21

E. An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F. An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I. An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J. An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's

Accessibility Policy to ensure the persons with disabilities have full and equal

enjoyment of the Website and shall accompany the public policy statement with

an accessible means of submitting accessibility questions and problems;

K. An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

L. Such other and further relief as the Court deems just and equitable.

DATED: February 20, 2025.

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 N. Hiatus Road
Sunrise, FL 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email: rhannah@rhannahlaw.com

By:  *s/ Roderick V. Hannah*
     RODERICK V. HANNAH
     Fla. Bar No. 435384

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
6355 N.W. 36th Street, Suite 307
    Virginia Gardens, FL 33166
    T. 305/266-9780
    305/269-8311 (Facsimile)
Email: Duranandassociates@gmail.com

By:  *s/ Pelayo M. Duran*
     PELAYO M. DURAN
     Fla. Bar No. 0146595

23